# Tatham and Others' Appeal.

1. The 38th sect. of Act of February 2d 1854 (Philadelphia Consolidation Act), enacts that "no debt shall be incurred or loans made by the city without a contemporaneous appropriation of a sufficient annual income or tax to pay the interest and sink the principal in thirty years." Held, that this is applicable only to funded debts or loans of the city.

2. This provision does not require that every contract, although it may eventuate in a debt, shall be accompanied with such appropriation.

3. An ordinance appropriated a sum " to be taken from a loan to be hereafter created * * * for the graduation and masonry for a bridge," &c. By the ordinance the contract with the builder and his sureties were approved, provided they should furnish to the city solicitor evidence of their ability, &c. Held, that although the appropriation might be invalid, it did not render the contract so.

4. There is nothing in the Consolidation Act or supplements requiring that there should be an actual appropriation contemporaneous with a contract made by the councils and not by a head of department

30 P. F. SMITH—30

[Tatham's Appeal.]

5. The provisions in the 26th sect. of the Act of May 13th 1856, requiring a contract to be made with the lowest bidder, and the 20th sect. of Act of April 21st 1855, as to the approval of the contract and sureties, relate to the usual annual supplies of the departments.

January 31st 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the decree at Nisi Prius : In Equity : No. 8, to January Term 1874.

The bill in this case was filed September 18th 1874, by Henry B. Tatham and others, taxpayers of the city of Philadelphia, against the City of Philadelphia, William S. Stokley, mayor, and Samuel P. Hancock, controller of the city, and William M. Wiley. The bill set out : —

1. Section 20th of a supplement passed April 21st 1855, to the act consolidating the city of Philadelphia, provided that no contract for the construction of any bridges to be paid for by the city should be binding without an ordinance for it, and no contract should be made by any head of department for work or materials for the city unless the contract and sureties should be approved by the city solicitor and the councils.

2. By the 21st section no appropriation of money should be made without an ordinance expressing the objects, the amount appropriated for each object, and that the mayor should withhold his signature for all new constructions until the interest on city loans, the principal becoming due, and the ordinary expenses of the city, &c., be adequately provided for.

3. The 36th section of a further supplement passed May 13th 1856, provided " that all goods, merchandise and other articles" should be purchased or contracted for only in such manner as prescribed by ordinance ; and councils must so prescribe the manner and time of receiving proposals for supplies which must be preceded by advertisement ; and prohibiting the award of a contract to any " but the lowest bidder who shall give the requisite security therefor."

4. On the 17th of September, the mayor (defendant) approved an ordinance, " to approve of the award of a contract and the contract and sureties for the graduation and masonry of a bridge over Schuylkill, at Fairmount, and to make an additional appropriation therefor." Previously to the ordinance, proposals for completing the above work had been received by the chief engineer of the city and reported to councils ; there were seven bids, three were less than Wiley's (defendant)—the lowest, that of John Runk, being $197,000 less ; three were higher. The ordinance appropriated " $260,000 to be taken from a loan hereafter to be created" for the graduation and masonry of the bridge, the work to be done by Wiley in accordance with his proposal, and the contract with him

was approved ; the sureties were approved, provided they should furnish to the city solicitor evidence of their ability, &c.

5. The city had concluded or were about to conclude the contract with Wiley and to carry out the directions of the ordinance.

7. The ordinance was contrary to law.

I. In awarding the contract to Wiley, he not being the lowest and best bidder.

II. In appropriating money for the purpose out of a loan thereafter to be created.

III., IV. In approving the contract, and sureties upon their furnishing evidence to the city solicitor of their ability.

V. In the refusal to award the contract to Runk, the lowest bidder, an increased liability of $197,000 would be created against the city.

8. The Act of April 24th 1854 requires the court to grant relief on the application of any taxpayer by injunction for any violation of the act to incorporate the city.

The prayers were :—

1. That the ordinance approving the contract, &c., should be declared unlawful.

2. That the mayor be enjoined from executing any contract under the ordinance.

3. That, if the contract had been executed, Wiley be restrained from proceeding in its performance.

4. That the controller be restrained from countersigning any warrant for any payment under the contract.

5. For further relief.

The defendants demurred to the bill: that it did not state such a case as entitled them to the relief prayed for ; that by the Act of April 8th 1846, the Supreme Court is prohibited from granting the injunction prayed for, it not appearing in the bill that the questions have been finally decided by common-law courts.

The Act of February 2d 1854 (Consolidation Act), sect. 38 (Pamph. L. 42), provides that all the debts of the city shall be consolidated into one, to be known as the debt of the city of Philadelphia, &c., and proceeds:—

" Certificates of which said debts are to be issued in sums of not less than one hundred dollars, in lieu of the present separate debts so consolidated, to the respective owners, in lieu of their present certificates of the same, at the option of such owners, bearing the same rate of interest that the debts so to be exchanged now bear, and payable on the first days of January and July, at the office of the treasurer of the city of Philadelphia ; there shall be annually raised by tax, in addition to the income of the corporation property, a sum sufficient to discharge the annual interest of the said consolidated city debt, and no debt shall be incurred or loans made by the said city without a contemporaneous appropria-

[Tatham's Appeal.]

tion of a sufficient annual income or tax, exclusive of loans, to pay the interest and sink the principal of such debts in thirty years."

The Act of April 21st 1855 (Pamph. L. 264), a supplement to the Consolidation Act, enacts, sect. 20 : That no contract for any new building, bridge, &c., to be paid by the city, shall be binding, "without an ordinance therefor duly enacted : No contract shall be made by the head of any department for work or materials for the city unless for objects authorized by councils, and if for new work the contract and sureties shall be approved by the city solicitor and councils," &c.

The provisions of section 21 of the same act, and of the 26th section of the Act of May 23d 1856 (Pamph. L. 563), are as is stated in the plaintiffs' bill.

The Act of April 8th 1846 (Pamph. L. 272), enacts that no courts in Philadelphia shall grant or continue injunctions " against the erection or use of any public works of any kind erected or in progress of erection under the authority of an act of the legislature, until the questions of title and damages shall be submitted and finally decided by a common-law court."

On the 22d of December 1873, the court at Nisi Prius sustained the demurrers and dismissed the bill.

The plaintiffs appealed to the court in banc and assigned the decree at Nisi Prius for error.

*A. M. Burton* and *E. S. Miller*, for appellants.—The ordinance is not duly enacted within the meaning of the 20th sect. of the Act of 1855. In construing statutes relating to public corporations, great weight is given to the uniform practice under them : Dillon on Mun. Corp., sect. 57, and cases cited ; Sherwin *v.* Bugbee, 16 Verm. 439. Municipalities are to be confined within a strict construction of their granted powers : Cooley on Const. Law 195 ; Dillon on Mun. Corp., sect. 55 ; Farmers' Loan & T Co. *v.* Carroll, 5 Barb. 49 ; Ruggles *v.* Collier, 43 Mo. 352 ; Sank *v.* Philadelphia, 4 Brewster 143 ; Commonwealth *v.* Allen, 20 P. F. Smith 465. Councils could not delegate the duty of the approval of the sureties to the city solicitor : Cooley on Constitutional Limitations 204, 205 ; Thompson *v.* Schermerhorn, 2 Seld. 92 ; St. Louis *v.* Clemens, 43 Mo. 395 ; State *v.* Jersey City, 1 Dutcher 309. Equity will enjoin an act of a municipal corporation which is illegal and which will affect injuriously the property owner or the taxable inhabitant : Dillon on Municipal Corporations, sect. 736 ; High on Injunction, sect. 793, 794, 795, and note ; Sharpless *v.* Mayor of Philadelphia, 9 Harris 148 ; Moers *v.* City of Reading, Id. 188. It is not ground of objection to complainant's bill, that if the contract complained of is invalid, it cannot be enforced ; the fact that it creates a moral obligation, or may, in the future, cause

embarrassment to the city, is enough to warrant the interposition of a court of equity : Newell *v.* The People, 3 Selden 9; Pullman *v.* Mayor, 49 Barb. 57 ; Baltimore *v.* Gill, 31 Maryland 390.

The ordinance is a breach of trust. A municipal corporation is regarded as being the depositary of a public trust and therefore within the jurisdiction of equity for a breach of trust: High on Injunction, sect. 783; N. London *v.* Brainerd, 22 Conn. 552; Melhan *v.* Sharp, 15 Barb. 193; Harvey *v.* Indianapolis Railroad, 32 Ind. 247; Parr *v.* The Attorney-General, 8 Cl. & Fin. 409 ; Stuyvesant *v.* Pearsall, 15 Barb. 244.

*R. N. Willson* and *G. W. Biddle* (with whom were *A. S. Biddle* and *C. H. T. Collis*), for the appellees, cited McLaughlin *v.* Kneass, 7 Phila. R. 634.

Mr. Justice SHARSWOOD delivered the opinion of the court, February 21st 1876.

This was a bill filed in this court, and decided at Nisi Prius, by the complainants, as taxpayers of the city of Philadelphia, charging that the ordinance passed by the city councils, and approved by the mayor, September 17th 1873, entitled "An ordinance to approve the award of the contract, and the contract and sureties for the graduation and masonry for a bridge over the river Schuylkill at Fairmount, and to make an additional appropriation therefor," is invalid, as being in violation of the Acts of Assembly of April 21st 1855, and May 13th 1856, which were supplements to the act consolidating the city of Philadelphia, and that the respondents be enjoined from executing, carrying out, or issuing warrants in payment of said contract. To this bill the respondents demurred generally, and the decree of the court below was that the demurrer be sustained and the bill dismissed.

Those parts of the Act of April 21st 1855, Pamph. L. 264, which are relied on by the appellants, are the 20th and 21st sections, which provide, " that no contract for the construction of any bridge to be paid for by the city shall become binding thereon without an ordinance therefor duly enacted ; and no contract shall be made by the head of any department for work or materials for the city unless the contract and sureties be approved by the city solicitor and councils, that no appropriation shall be made of the moneys of the city without an ordinance therefor, expressing the objects thereof and the amount appropriated for such objects; and that the mayor shall withhold his signature for all new constructions, as aforesaid, until all the interest accruing on the loans of the city, and the principal of those becoming due, and the ordinary and usual expenses of the city and the administration of justice in the courts shall be adequately provided for."

It is contended that the ordinance in question was not duly

enacted because it was in violation of the 38th section of the Consolidation Act of February 2d 1854, Pamph. L. 41, which provides that "no debt shall be incurred or loans made by the said city without a contemporaneous appropriation of a sufficient annual income or tax exclusive of loans to pay the interest and sink the principal of such debt."

We think it very plain, from reading the whole section from which this clause is taken, that it is applicable only to the funded debts or loans of the city. The section throughout relates to the consolidated city debt, and the concluding clause relied on is immediately preceded by the provision, "there shall be annually raised by tax, in addition to the income of the corporation property, a sum sufficient to discharge the annual interest of the said consolidated city debt."

As to any future increase of that debt, it was provided that it should be accompanied with such an appropriation of annual income (of corporation property) or tax as would be sufficient to pay the interest and sink the principal of such debt in thirty years. It was a very wise and salutary restriction upon the power of increasing the city debt. It is true that every contract which the city councils may make or may authorize to be made will generally eventuate in a debt. But surely it was not intended to enact that every such contract should be accompanied by such an appropriation. It is said, however, that there must either be an appropriation from moneys raised by taxation or from income actually in the treasury, or by a loan under the restrictions provided by the law. It is maintained then, that the appropriation in the ordinance in question, "to be taken from a loan to be hereafter created," is unlawful and renders the whole ordinance invalid. The contention is plausible; but the fallacy lies in infecting the contract made by the ordinance with the vice of the appropriation. We may admit that the appropriation is invalid. Future councils may neglect or refuse to create the loan, or not recognise this appropriation as a binding claim upon it. But there is nothing in the Consolidation Act, or any of its supplements, which requires that there should be an actual appropriation contemporaneous with a contract made by the authority of councils, and not by the head of a department. "No contract," says the Act of 1855, "shall be made by the head of any department for work or materials for the city, unless for objects authorized by councils." "No debt or contract," says the Act of 1858, "hereafter incurred or made shall be binding upon the city of Philadelphia unless authorized by law or ordinance, and an appropriation sufficient to pay the same be previously made by councils." All these acts are to be construed together, and in that view it seems evident that these provisions were intended to prohibit any officer or head of department from incurring any debt or making any contract with-

[Tatham's Appeal.]

out previous authority of law or ordinance, and without an appropriation.

That it cannot apply to the acts of the councils, to contracts directly authorized or made by ordinance, is evident from this consideration alone : that there must then be two ordinances : 1st. An ordinance authorizing councils to enter into the contract and making the appropriation ; and 2d. An ordinance making or ratifying the contract. The legislature must certainly have considered that emergencies might arise requiring the immediate expenditure of large sums of money, either to restore what had been swept away by some destructive element, or to ward off some great impending calamity.

It did not mean that the hands of the councils should be tied in such cases until there was an amount of money in the treasury arising from income or taxation sufficient to meet it. Whoever makes a contract with the city upon the faith of a promise that it shall be paid out of a future loan runs the risk that the loan may never be legally authorized ; that the money may never be obtained upon it, since it is clear that it could not be enforced by any proceeding in law or equity. That is no reason why a court of equity should interpose and stop the work. The consequences of such a defect of power in the city as that contended for by the appellants, might indeed be of the most serious character, and would of itself be a sufficient reason why a court of equity should not interfere.

The remaining grounds of the bill may be briefly disposed of. It is said that the contract here was not awarded to the lowest bidder in accordance with the 26th section of the Act of May 13th 1856. It is evident, we think, that the provisions of this section relate only to the usual annual supplies for the several departments : Murphy v. The City, 25 Leg. Int. 333 ; McLaughlin v. Kneass, 7 Phila. R. 634. The same remark applies to the provision of the 20th section of the Act of April 21st 1855, that the contract and sureties shall be approved by the city solicitor and councils. It is expressly for the case of contracts by the head of any department for work or materials. On the whole, we are of opinion that the demurrer was properly sustained and the bill dismissed.

> Decree affirmed, and appeal dismissed at the costs of the appellants.